UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| G & G FREMONT, LLC, a Nevada limited Liability company; CRAZY ELY WESTERN VILLAGE, LLC, a Nevada limited liability company,<br><br>Plaintiff(s),<br><br>v.<br><br>CITY OF LAS VEGAS,<br><br>Defendant(s). | Case No. 2:14-CV-1006 JCM (PAL)<br><br>ORDER |

Presently before the court is defendant City of Las Vegas's (the "City" or the "defendant") motion for summary judgment. (ECF No. 44). Plaintiffs G&G Fremont, LLC's and Crazy Ely Western Village, LLC's (collectively, as the "property owners" or the "plaintiffs") filed a response (ECF No. 48), and the City filed a reply (ECF No. 50).

Also before the court is the property owners' motion for partial summary judgment. (ECF No. 45). The City filed a response (ECF No. 49), and the property owners' filed a reply (ECF No. 51).

**I.     Background**

The present case involves the regulation of package liquor sales by the City along the Fremont Street Experience ("FSE"). (ECF No. 44 at 2). The property owners own shops that sell packaged liquor on the FSE. (ECF No. 45 at 3). At the Las Vegas Planning Commission's July 9, 2013 meeting, members of the public and a representative of the Las Vegas Metropolitan Police Department ("LVMPD") opposed the applications of four new package liquor stores and voiced their concerns about issues caused by these stores. (*Id.* at 3). The accounts from the individuals

James C. Mahan
U.S. District Judge

1  present described various issues with the package sales, including: (1) how the package stores
2  routinely oversold alcoholic beverages to visibly intoxicated patrons; and (2) the availability of
3  high-alcohol drinks in large quantities. (ECF No. 44 at 3). The planning commission also heard
4  accounts of the effect of package liquor on underage drinking and crime. (*Id.* at 4–5).
5  Furthermore, a retired LVMPD sergeant spoke about his experiences with crowd issues and
6  underage drinking involving package liquors. (*Id.* at 5). Finally, the City received petitions
7  opposing the applications for new package liquor purveyors with over 1,000 signatures. (ECF No.
8  45 at 7).

9  As a result of this meeting and further discussion, the City ultimately adopted Bill No.
10 2013-15 as Ordinance No. 6287 and imposed a 180-day moratorium on new land use entitlements
11 and business licenses for package liquor on FSE. (*Id.* at 6). Subsequently, in May 2014, the City
12 passed Ordinance No. 6320. (ECF No. 45 at 2). The ordinance, enacted as LVMC 6.50.475,
13 applied only to souvenir stores along the FSE selling packaged liquor. (ECF No. 45 at 3). These
14 new restrictions prohibited the sale of "single serving products containing alcohol for immediate
15 consumption," such as Jell-O shots or candy; any malt or beer beverage greater than thirty-two
16 liquid ounces in size or an alcohol content greater than eleven percent alcohol by volume. The
17 ordinance further prohibited the sale of alcohol (except beer or wine) in containers less than three
18 hundred seventy-five milliliters. § 6.50.475(A), (C)–(E).

19 LVMC 6.50.475 also contained several advertising restrictions. (ECF No. 44 at 21). The
20 ordinance required that the stores limit their alcohol advertising to only ten percent of their store
21 windows, and it prohibited stores from posting alcohol price advertisements visible to individuals
22 standing outside of the establishment. § 6.50.475(F)–(H). The ordinance also required that the
23 stores post signs informing customers that it is prohibited to open or consume alcohol purchased
24 at the store on the pedestrian mall. § 6.50.475(I).

25 The property owners filed the instant complaint on June 20, 2014, alleging thirteen claims
26 for relief. (ECF No. 1 at 26). On October 7, 2015, the city council repealed former LVMC
27 6.50.475(F)–(H). (ECF No. 44 at 21). Defendant now moves for summary judgment and plaintiffs
28 move for partial summary judgment. The court will address each in turn.

**James C. Mahan**
**U.S. District Judge**

**II.     Legal Standard**

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990).  However, to be entitled to a denial of summary judgment, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the non-moving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the

**James C. Mahan**
**U.S. District Judge**

opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### III. Discussion

#### A. Substantive Due Process

The Fifth and Fourteenth Amendments provide that a person may not be deprived of life, liberty, or property without due process of law. These guarantees, however, "apply only when a constitutionally protected liberty interest or property interest is at stake." *Tellis v. Godinez,* 5 F.3d 1314, 1316 (9th Cir. 1993), *cert. denied*, 513 U.S. 945 (1994). Demonstrating the existence of a constitutionally protected liberty or property interest is a threshold requirement to a substantive or procedural due process claim. *See Bd. of Regents v. Roth,* 408 U.S. 564, 569 (1972); *Wedges/Ledges of California, Inc. v. City of Phoenix,* 24 F.3d 56, 62 (9th Cir. 1994).

The property owners argue that they have a property interest in their package liquor licenses that entitle them to protection under the Fifth and Fourteenth Amendments. In support, plaintiffs inappropriately cite to *In re Petite Auberge Vill., Inc.*, 650 F.2d 192 (9th Cir. 1981), which held that a liquor license is a state-created property right in the context of a bankruptcy proceeding.

James C. Mahan
U.S. District Judge

- 4 -

The Nevada Supreme Court has held that "due process presumes a protectable property or liberty interest. This court and the majority of others have held that a liquor licensee has no such interest." *Kochendorfer v. Bd. of Cnty. Comm'rs*, 566 P.2d 1131, 1134 (Nev. 1977). "There is no inherent right in a citizen to sell intoxicants . . . ." *Gragson v. Toco*, 520 P.2d 616, 617 (Nev. 1974).

Because the property owners do not have a constitutionally protected property interest in their liquor license, much less any cognizable interest in the extent to which such a license is regulated, the court finds that the property owners' Fifth and Fourteenth Amendment rights have not been violated. The property owners have not demonstrated a viable, constitutionally protected property interest for which they may assert a substantive due process claim. Accordingly, the court will grant the City's motion for summary judgment with respect to the property owners' substantive due process claim.

### B. Void for Vagueness

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 109 (1972); *see also Papachristou v. City of Jacksonville*, 405 U.S. 156 (1972). A statute is unconstitutionally vague if it fails to give a person of ordinary intelligence fair notice that his or her conduct is forbidden by the statute. *See, e.g.*, *United States v. Harriss*, 347 U.S. 612, 617; *see also Williams v. State*, 50 P.3d 1116, 1122 (Nev. 2002). While the property owners may not agree with the municipality's rationale behind the city ordinance in question, the court finds that LVMC 6.50.475 is not unconstitutionally vague. Contrary to plaintiffs' assertion, a person of ordinary intelligence would not be perplexed by the phrase "single serving product." *See* (ECF No. 1 at 19).

The property owners further challenge the "purpose" and "reason why" the City would pass the various restrictions contained within the ordinance. Such inquiries are beyond the scope of the void for vagueness doctrine. *See, e.g.*, *Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972) (noting that the primary purposes of the void for vagueness doctrine is to put citizens on reasonable notice of what is prohibited and to prevent arbitrary enforcement of the law).

Accordingly, the court will grant summary judgment in favor of the City with respect to the property owners' void for vagueness claim.

### C. Procedural Due Process

In evaluating a potential procedural due process violation, the Ninth Circuit has outlined a two-step inquiry: "The first asks whether there exists a liberty or property interest which has been interfered with by the [s]tate; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *United States v. Juvenile Male,* 670 F.3d 999, 1013 (9th Cir. 2012), *cert. denied*, 133 S. Ct. 234 (2012) (citation omitted). As previously discussed, plaintiffs have not alleged a constitutionally protected liberty or property interest. Therefore, plaintiffs have failed to state a claim for violation of procedural due process, and the court will grant defendant's motion for summary judgment with respect to the property owners' procedural due process claim.

### D. Equal Protection

The property owners base their equal protection claim on the assertion that the City has arbitrarily placed "devastating" regulations on one limited class of business. (ECF No. 1 at 12). The property owners further argue that the ordinance is underinclusive and not based on any articulable government interest. (*Id.* at 13).

Defendant argues that summary judgment should be granted in its favor with respect to the property owners' equal protection claim because the City has broad power under the Twenty-First Amendment to categorize and license businesses that sell alcohol. (ECF No. 44 at 10–11). Defendant asserts that its ordinance clearly satisfies rational basis scrutiny, as it may rationally classify and license taverns and package stores differently based upon their different purposes. (*Id.* at 12).

With respect to the property owners' argument that the ordinance unconstitutionally singles out one type of business, the United States Supreme Court has held that a class-based distinction is allowable if "the classification has relation to the purpose for which it is made and does not contain the kind of discrimination against which the Equal Protection Clause affords protection. It is by such practical considerations based on experience rather than by theoretical inconsistencies

James C. Mahan
U.S. District Judge

- 6 -

1  that the question of equal protection is to be answered." *Railway Express Agency, Inc. v. New York*, 336 U.S. 106, 110 (1949).

"Unless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, our decisions presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest." *City of New Orleans v. Dukes*, 427 U.S. 297, 303–04 (1976). "The judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines." *Id.*

Businesses holding liquor licenses are not recognized as a suspect class deserving of a higher standard of scrutiny under equal protection doctrine. Thus, the court analyzes the ordinance under rational basis review. The City has broad powers, not only under the Twenty-First Amendment, but also under NRS 268.090 and § 2.150(3), to regulate the sale of liquor. Under this authority, the City may categorize businesses differently based on their distinct purposes. LVMC 6.50.240 defines "tavern licenses" as a location where "the sale of alcoholic beverages for consumption on the premises" and "package licenses" as those authorizing the sale of alcohol "for consumption off the premises."

The distinction between the two is further evidenced by the cost difference in the license and the annual fee. Since the City has the authority and the interest in regulating alcohol sales, it may treat sellers of alcohol who operate in different ways with differing ordinances and requirements.

Furthermore, "reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind." *Williamson v. Lee Optical of Oklahoma Inc.*, 348 U.S. 483, 489 (1955) (citation omitted). Therefore, the property owners's argument that the ordinance is "underinclusive" is without merit. The municipality asserts that it passed the ordinance to correct problems caused by package liquor sales in the downtown area. (ECF No. 44 at 3). Even if passing a restriction on the sale of alcohol in souvenir stores along the FSE does not

1  address the full scope of the problems identified by the municipality, the narrow reach of the
2  ordinance alone is not conclusive of any violation of the equal protection clause.

3  Accordingly, the court will grant defendant's motion for summary judgment with respect
4  to the property owners' equal protection claim.

### E. First Amendment

The property owners argue that Ordinance 6320 violates their right to free speech under the First Amendment. (ECF No. 1 at 16–17). They claim that the ordinance's prohibition on alcohol price displays and limitation on the display of alcoholic beverages infringes upon protected commercial speech. (*Id.* at 17). The property owners also point to the Ninth Circuit's ruling on their appeal to demonstrate that the City has yet to prove with sufficiency that it meets the third and fourth prong of the *Central Hudson* test. *See Crazy Ely W. Vill., et al. v. City of Las Vegas*, 618 Fed. App'x 904, 907 (9th Cir. 2015); (ECF No. 45 at 7).

In response, the City argues that the Ninth Circuit's ruling and any determination of the sufficiency of the First Amendment claim has been rendered moot because on October 7, 2015, the City repealed the sections of Ordinance 6320 that served as the basis for the claim. *See* (ECF No. 49 at 2) ("The repeal of LVMC 6.50.475(F)–(H) by Ordinance 6468 eliminated any live First Amendment controversy . . . .").

"A claim is moot when 'the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'" *People of Vill. of Gambell v. Babbitt*, 999 F.2d 403, 406 (9th Cir. 1993) (quoting *Western Oil & Gas Ass'n v. Sonoma Cnty.*, 905 F.2d 1287, 1290 (9th Cir. 1990)). "A statutory change, however, is usually enough to render a case moot, even if the legislature possesses the power to reenact the statute after the lawsuit is dismissed. As a general rule, if a challenged law is repealed or expires, the case becomes moot." *Native Vill. of Noatak v. Blatchford*, 38 F.3d 1505, 1510 (9th Cir. 1994). "The exceptions to this general line of holdings are rare and typically involve situations where it is virtually certain that the repealed law will be reenacted." *Id.*

The property owners argue that the above cases deal with state legislatures rather than municipalities, which means that the mootness analysis is inapposite to this case. (ECF No. 51 at

**James C. Mahan**
**U.S. District Judge**

- 8 -

7).  They contend that the repeal of an ordinance by a municipality is not afforded the same deference.  *See Bell v. City of Boise*, 709 F.3d 890, 899 (9th Cir. 2013) ("repeal or amendment of an ordinance by a local government or agency does not deprive a federal court of its power to determine the legality of the practice") (internal quotation marks omitted).  The municipality faces the "heavy burden of proving that the challenged conduct cannot reasonably be expected to recur . . . ."  *White v. Lee*, 227 F.3d 1214, 1244 (9th Cir. 2000).

Here, a genuine issue of material fact exists concerning whether the City has sufficiently demonstrated that it will not reenact the same ordinances that served as the basis for the First Amendment claim.  The property owners argue that the recommending committee meeting dated October 5, 2015, demonstrates that the City has not met its burden of showing the activity will not recur.  (ECF No. 51 at 5).  Deputy city attorney Cameron Val Steed states: "the City Attorney is recommending that we repeal [the provisions] and we come back in the future with a new record and other, perhaps, similar types of provisions that have a better chance of . . . uh . . . being upheld in court."  (*Id.* at 5).

The court finds that this statement is not conclusive and does not resolve the genuine issue of material fact.  On the one hand, this statement could be characterized as the deputy city attorney admitting that the city authorities will simply reenact the same offensive provisions.  On the other hand, the deputy city attorney's choice of words, "similar types of provisions that have a better chance of being upheld in court," could reflect the City's desire to pass provisions that do not offend the First Amendment rights of the property owners.  As this determination requires consideration of the credibility of the evidence, it is not an issue that is ripe for summary judgment.

Accordingly, the court will deny both the property owners' and the City's motions for summary judgment as they relate to the First Amendment claim.

### F.  Sherman Act

The property owners argue that the ordinances are meant to "eliminate price competition and to decrease output in the retail alcohol market along the Pedestrian Mall." (ECF No. 1 at 23). They argue that the ordinance "forces illegal contract, combinations, and conspiracies among retailers," which "violat[e] of Section 1 of the Sherman Act." (*Id.*).  The City argues in its motion

James C. Mahan
U.S. District Judge

- 9 -

for summary judgment that its actions are not subject to the Sherman Act because of *Parker* immunity. (ECF No. 44 at 18).

The Sherman Act generally does not apply to state action or legislation. *See Parker v. Brown*, 317 U.S. 341, 352 (1943) (stating that government actions to restrain trade are not under the purview of the Sherman Act). As the Ninth Circuit stated, "[t]he *Parker* immunity doctrine protects most state laws and actions from antitrust liability." *Sanders v. Brown*, 504 F.3d 903, 915 (9th Cir. 2007). Indeed, "even a state law that would violate the Sherman Act is immune from attack on antitrust grounds." *Id.* The same immunity has been extended to municipalities when they act pursuant to state policy. *See City of Columbia v. Omni Outdoor Adver. Inc.*, 499 U.S. 365, 370–71 (1991).

To receive *Parker* immunity, however, the state or municipality must clearly articulate and affirmatively express its policy. *See Cmty. Commc'ns Co., Inc. v. City of Boulder*, 455 U.S. 40, 51 (1982). "To meet the clearly articulated requirement it is not necessary for the state to expressly permit the displacement of competition. Instead, it is only required that suppression of competition is the foreseeable result of what the statute authorizes." *A-1 Ambulance Serv. v. Cnty. of Monterey*, 90 F.3d 333, 336 (9th Cir. 1996). As the property owners correctly note, the sole exception to this immunity is when the state law "give[s] immunity to those who violate the Sherman Act by authorizing them to violate it, or by declaring that their action is lawful." *Sanders*, 504 F.3d at 915 (quoting *Parker*, 317 U.S. at 351).

While the property owners argue that the City was not acting according to a clearly articulated state policy, it is clear to this court that the possible effects on competition were reasonably foreseeable from the state's policy. NRS 268.090 and § 2.150(3) of the Las Vegas City Charter confers to the City the power to regulate liquor in a variety of ways. While there is no explicit ability for the City to place restrictions on competition, the provisions contain several powers to limit trade. The legislature must have reasonably foreseen that the suppression of competition could be a result of these authorities. Therefore, the court finds that the City acted according to a clearly articulated state policy and is immune under the standard set forth in *Parker*.

**James C. Mahan**
**U.S. District Judge**

1     The property owners also argue that, even if the City was acting accordingly to a clearly
2 articulated policy, the ordinance qualifies for the exception because it is an "attempt to give
3 immunity to those [who] violate the Sherman Act (by authorizing them to violate it) . . . ." (ECF
4 No. 48 at 8). The property owners do not provide any facts to support that assertion. Nothing in
5 the record indicates that the ordinances in question are meant to authorize other purveyors of
6 alcohol to violate the Sherman Act.

7     Accordingly, the court will grant summary judgment in favor of the City with respect to
8 plaintiffs' Sherman Act claim.

### G.  Bill of Attainder

The property owners' argument that the regulatory scheme constitutes a bill of attainder is misguided and unsupported by case law. A bill of attainder "legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial." *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 468 (1977). The ordinances regulate the sale of liquor and the associated advertisements; they do not target the property owners, nor do they inflict punishment on them.

Accordingly, the court finds no genuine issues of material fact regarding the claimed bill of attainder and will grant defendant's motion for summary judgment on the bill of attainder claim.

### H.  Civil Rights under 42 U.S.C. § 1983

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). As described above, the property owners do not have a property interest in their package liquor licenses. Since they cannot demonstrate an interest or a right, the property owners are also unable to sustain a claim for a § 1983 violation.

Accordingly, the court will grant defendant's motion for summary judgment as to plaintiffs' § 1983 claim.

27  . . .
28  . . .

**James C. Mahan**
**U.S. District Judge**

- 11 -

*I. Inverse Condemnation*

"Inverse condemnation is an action against a governmental defendant to recover the value of property which has been taken in fact by the governmental defendant, even though no formal exercise of the power of eminent domain has been attempted by the taking agency." *State Dep't of Transp. v. Cowan*, 103 P.3d 1, 3 (Nev. 2004) (quoting *Thornburg v. Port of Portland*, 376 P.2d 100, 101 n. 1 (Or. 1962)).  As fully discussed above, the court finds that the property owners do not have a recognizable property interest in their liquor licenses.  Therefore, plaintiffs may not bring a claim for inverse condemnation, under which a prerequisite is an identifiable property interest.

Accordingly, the court will grant summary judgment to the City on the issue of inverse condemnation.

**IV.    Conclusion**

In sum, the court grants the City's motions for summary judgment on plaintiffs' claims with respect to substantive due process, void for vagueness, procedural due process, equal protection, the Sherman Act, bill of attainder, and the issue of inverse condemnation.  Moreover, the court denies both the City's and plaintiffs' motion for summary judgment as they relate to the First Amendment claim.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendant City of Las Vegas' motion for summary judgment (ECF No. 44) be, and the same hereby is, GRANTED consistent with the foregoing.

IT IS FURTHER ORDERED that plaintiffs G&G Fremont, LLC's and Crazy Ely Western Village, LLC's motion for partial summary judgment (ECF No. 45) be, and the same hereby is, DENIED consistent with the foregoing.

DATED August 10, 2016.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**

*I. Inverse Condemnation*

"Inverse condemnation is an action against a governmental defendant to recover the value of property which has been taken in fact by the governmental defendant, even though no formal exercise of the power of eminent domain has been attempted by the taking agency." *State Dep't of Transp. v. Cowan*, 103 P.3d 1, 3 (Nev. 2004) (quoting *Thornburg v. Port of Portland*, 376 P.2d 100, 101 n. 1 (Or. 1962)).  As fully discussed above, the court finds that the property owners do not have a recognizable property interest in their liquor licenses.  Therefore, plaintiffs may not bring a claim for inverse condemnation, under which a prerequisite is an identifiable property interest.

Accordingly, the court will grant summary judgment to the City on the issue of inverse condemnation.

**IV.    Conclusion**

In sum, the court grants the City's motions for summary judgment on plaintiffs' claims with respect to substantive due process, void for vagueness, procedural due process, equal protection, the Sherman Act, bill of attainder, and the issue of inverse condemnation.  Moreover, the court denies both the City's and plaintiffs' motion for summary judgment as they relate to the First Amendment claim.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendant City of Las Vegas' motion for summary judgment (ECF No. 44) be, and the same hereby is, GRANTED consistent with the foregoing.

IT IS FURTHER ORDERED that plaintiffs G&G Fremont, LLC's and Crazy Ely Western Village, LLC's motion for partial summary judgment (ECF No. 45) be, and the same hereby is, DENIED consistent with the foregoing.

DATED August 10, 2016.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**